**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AARON SLOAN, : | |
| : | |
| Plaintiff : | |
| : | CIVIL NO. 3:CV-11-0994 |
| v. : | |
| : | (Judge Caputo) |
| JOHN MURRAY, *et al.*, : | |
| : | |
| Defendants : | |

**M E M O R A N D U M**

**I.   Introduction**

Presently before the Court is the Defendants' Motion to Dismiss the Complaint. (Doc. 15). In his Complaint, *pro se* prisoner Plaintiff, Aaron Sloan, alleges that SCI-Camp Hill Department of Corrections (DOC) employees confiscated and destroyed his legal materials preventing him from filing one or more conditions of confinement actions related to his previous incarceration at SCI-Forest, in Marienville, Pennsylvania. Presently pending is Defendants' motion to dismiss. The motion has been fully briefed and is ripe for consideration.

For the reasons that follow, Defendants motion to dismiss will be granted in part and denied in part.

**II.   Standard of Review**

In considering a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted). To survive a motion to dismiss, a complaint must allege sufficient facts, if accepted as true, state "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678, 129 S.Ct. at 1949. The court is " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id.* at 678, 129 S.Ct. at 1950 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965); *see also PA Prison Soc. v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), a district court's "inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If a party opposing a motion to dismiss does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits and matters of public record. *See Sands v. McCormick*, 502 F.3d 263

(3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). However, under no circumstance is a court required to accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See DelRio-Mocci v. Connonlly Prop., Inc.*, 672 F.3d 241, 251 (3d Cir. 2012). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

## III.     Background

Plaintiff, Aaron Sloan, a state prisoner presently housed at SCI-Fayette, in Labelle, Pennsylvania, initiated this action on May 19, 2011, while housed at SCI-Camp Hill.  Named as Defendants are the following SCI-Camp Hill employees: former Superintendent, John Murray; former Deputy Superintendent Richard Southers; former Grievance Coordinator, Ian Taggart; Lt. Kathy Flowers; Sgt. Joshua Flinn; former Unit Manager, Rodney Carberry; Assistant Chief Grievance Officer, Tracy Williams; and Executive Deputy Secretary of the Department of Corrections (DOC), Shirley Moore Smeal.  (Doc. 1, Compl. at p. 2.)  None of the named defendants is employed at SCI-Forest, in Marienville, Pennsylvania.

Mr. Sloan has been incarcerated since August 2005 and professes to be an "outspoken state prisoner".  (*Id.* at ¶ 1.)  He asserts that the following events occurred while housed at SCI-Forest: (1) on July 15, 2008, he was placed in an unsanitary cell "for a substantial time;" (2) again, between September 3 - 10, 2008, he was placed in a cell without proper water or sanitation, and denied adequate meals for retaliatory reasons; (3) from September 28, 2008, through January 2, 2009, he was repeatedly denied food, water and sanitation for seven (7) to eight (8) day stints; and that, (4) in November of 2008, his personal radio was confiscated and later destroyed.  (*Id.* at ¶¶ 1-4.)

Mr. Sloan intended to file civil rights actions regarding these events in either the Forest County Court of Common Pleas and/or the United States District Court for the Western District of Pennsylvania.  (*Id.* at ¶ 5.)  However, on September 18, 2010,

"[a]fter doing almost two (2) years of research & note taking, and acquiring the necessary declarations and other evidence to substantiate the claims plaintiff intended to make in those complaints," Lt. Flowers, Sgt. Flinn and two unidentified corrections officers "intentionally destroyed" his legal materials. (*Id*.)  This event occurred at SCI-Camp Hill.

Mr. Sloan alleges that Lt. Flowers, Sgt. Flinn and the other officers, "with the approval of" Defendants John Murray and Richard Southers destroyed his legal property. (*Id*. at ¶ 7.)  Plaintiff contacted the following individuals at SCI-Camp Hill seeking to have his property returned: J. Bailey (non-defendant), Superintendent Murray, Grievance Coordinator Taggart and Assistant Chief Grievance Officer Williams. (*Id*. at ¶ 8.)  He also alleges Defendants Murray, Southers, Taggart, Williams and Carberry "intentionally falsified & manipulated facts" to "cover up" the alleged wrongdoings of their subordinate officers. (*Id*. at ¶ 8.)  These events occurred between October 8, 2010 and March 21, 2011. (*Id*.)  Mr. Sloan also asserts that Defendants Murray, Southers, Carberry, Taggart, Williams and Smeal are "responsible" for failing to adequately train and monitor, and thus condoning, the acts of their subordinates. (*Id*. at ¶ 9.)  Finally, he alleges that all of the named defendants are "co-conspirators" in the events that led to his inability "to present claims and redress grievances through the courts and become weak where he is normally strong." (*Id*. at ¶ 10.)

As relief, Mr. Sloan seeks compensatory and punitive damages.

**IV.    Discussion**

    **1.    Lack of Personal Involvement of Murray, Southers, Taggart, Carberry, Williams and Smeal.**

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003).

In *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948, the Supreme Court observed that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." The Court further emphasized that in a § 1983 suit or a *Bivens* action, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, 556 U.S. at 677, 129 S.Ct. at 1949. A "defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Individual liability can only be imposed if the state actor played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207).

Alternatively, a supervisor may be held liable under § 1983 if it is shown that he or she "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Thus, supervisor liability may be imposed under Section 1983 only if "the connection between the supervisor's directions and the constitutional deprivation [is] sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010). Additionally, the absence of an underlying constitutional violation precludes any supervisory liability on a "knowledge or acquiescence" or "failure to train" theory. *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir. 2011) (nonprecedential); *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011).

A prison official's involvement in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. *See Rode*, 845 F.2d at 1208 (mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Here, Mr. Sloan claims that his legal materials were confiscated on September 18, 2010, by Lt. Flowers and Sgt. Flinn "with the approval of" Defendants Murray and Southers. (*Id*. at ¶¶ 5 and 7.) Clearly, based on this allegations alone, he has alleged

the personal involvement of Superintendent Murray and Deputy Superintendent Southers in the confiscation and destruction of his legal property.

However, the same cannot be said with respect to Mr. Sloan's claims against Taggart, Williams, Carberry and Smeal. The claims against these individuals will be dismissed because Mr. Sloan fails to allege their personal involvement in the decision or action to confiscate and destroy his property. Specifically, Mr. Sloan does not allege how Taggart, Williams, Carberry or Smeal participated in the decision to confiscate and "intentionally destroy" his legal materials. *See* Doc. 1 at ¶ 5. Their after-the-fact knowledge of the alleged September 18, 2010, event via the grievance system or letters he sent to them is insufficient to allege their personal involvement in the underlying allegation of wrongdoing. *See Rode*, *supra*; *Brooks, supra*. Furthermore, Mr. Sloan has failed to allege any of these defendants played an "affirmative part" in the complained-of misconduct based on their alleged supervisory roles. *See Chinchello,* 805 F.2d at 133. Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id*. (quoting *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990)). Here, Plaintiff has not alleged any personal involvement on the part of Taggart, Williams, Carberry or Smeal, apart from their receiving or responding to his written and verbal complaints. Such allegations are insufficient to state a claim upon which relief may be granted as to these Defendants.

In sum, Defendants' motion to dismiss the Complaint on the basis of lack of personal involvement is granted with respect to Taggart, Williams, Carberry and Smeal and denied as to Murray and Southers.

**2.     Mr. Sloan's Access-to-Court Claim**.

Prisoners have a fundamental constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). The right is limited to the filing of direct criminal appeals, habeas petitions and civil actions challenging the condition of their confinement. *See Lewis*, 518 U.S. at 356, 116 S.Ct. at 2182. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim), or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *See Christopher v. Harbury*, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87, 153 L.Ed.2d 413 (2002). A plaintiff must also allege an actual injury to his litigation efforts. *Lewis*, 518 U.S. at 351-52, 116 S.Ct. at 2180-81. "Actual injury" may be defined a "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." *Id.,* 518 U.S. at 358. 116 S.Ct. at 2178.

The Supreme Court explained that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong," which is no longer available to the plaintiff because he was "shut out of court." *Harbury,* 536 U.S. at 414-15, 122 S.Ct. at 2187. Therefore, the underlying lost claim, whether past or potential, must be nonfrivolous and arguable, and also must be described in the complaint. *Id.*; *see also Lewis*, 518 U.S. at 355, 116 S.Ct. at 2182. "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"

-9-

*Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008) (quoting *Christopher,* 536 U.S. at 416, 122 S.Ct. at 2187.) The predicate claim must be set forth in accordance with Fed. R. Civ. P. 8 "just as if were being independently pursued. *Christopher*, 536 U.S. at 417, 122 S.Ct. at 2187. Simply stating that a claim is "nonfrivolous" due to the action of a government official will not satisfy the actual injury requirement. *Id*., 536 U.S. at 415. 122 S.Ct. at 2186-87.

To assert a valid backward-looking access to courts claim, the Complaint must: (1) describe the underlying complaint which is arguable and nonfrivolous; (2) allege the official acts frustrating the litigation; and (3) identify a remedy not otherwise available. *Harbury*, 536 U.S. at 415, 122 S.Ct. at 2187.

Defendants contend that the September 18, 2010, confiscation and destruction of Mr. Sloan's legal property cannot assert an access-to-courts claim because he fails to allege "facts suggesting a loss or rejection of a non-frivolous challenge of his conditions of confinement ....[and because he] freely admits that he availed himself of the grievance process on his claims, that he has filed other lawsuits in federal court, and he was clearly not precluded from filing the instant matter." Doc. 16, Defs.' Mot. to Dismiss Br. at p. 8. We disagree. As noted above, the test at this point is not whether Mr. Sloan has availed himself of the grievance or court system before or after the alleged confiscation, but whether the confiscation of his legal materials hindered his ability to pursue a non frivolous claim (related to his direct criminal appeals, habeas petitions and/or civil actions challenging the condition of their confinement). In this regard, Plaintiff states that he has been denied access to legal property which has prevented him from pursuing the following legal actions: (1) his July 2008 placement

in an unsanitary cell for a substantial period of time; (2) his September 3-10, 2008, placement in an unsanitary cell; (3) the denial of basic sanitary and hygiene items for weeks at a time between September 28, 2008 and January 2, 2009; and (4) the November 2008 destruction of his personal radio. (Doc. 1 at pp. 2-3.) These purported civil actions were thwarted because he was "unable to present" these claims to the court. (*Id*. at p. 4.)  The alleged missing legal property contained "research & note taking, and acquiring the necessary declarations and other evidence to substantiate the claims plaintiff intended to make". (*Id*. at p. 3.)  Taking the allegations of Mr. Sloan's Complaint as true, these underlying claims can serve as the prerequisite "injury" to his access-to-courts claim as they were not, and now can not, be presented in any other form due to the September 18, 2010, confiscation of his related legal materials.  This is true with one exception.  The sole claim underlying claim the Court can, and will, dismiss as a predicate for an access-to-court claim is Mr. Sloan's claim regarding the confiscation and destruction of his personal radio while at SCI-Forest in the fall of 2008. This claim of negligent or intentional destruction of personal property does not challenge his conditions of confinement, or attack his criminal sentence and thus, cannot support a constitutional claim for denial of court access. *Lewis,* 518 U.S. 356, 116 S.Ct. at 2182 (A prisoner's right of access to the courts is not unlimited, but encompasses only "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.")

Next, to the extent the Defendants raise the state of limitations to challenge his present action, i.e. his access-to-courts claim, their focus is misplaced.  "The statute of limitations period for a §1983 claim arising in Pennsylvania is two years." *Kach v.*

-11-

*Hose*, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa. Cons. Sta. Ann. § 524. That period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the § 1983 action." *Gentry v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir. 1991). This period is subject to equitable tolling where: "(1) a defendant actively misleads a plaintiff with respect to [his/her] cause of action; (2) plaintiff has been prevented from asserting [his/her] cause of action as a result of other extraordinary circumstances; or (3) plaintiff asserts [his/her] claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 369, n. 9 (3d Cir. 2000). Here, Mr. Sloan alleges his materials were confiscated on September 18, 2010, so that is that date his access-to-courts claim accrued. Thus, his May 2011 action is timely. Again, we are not litigating the merit of the predicate claims in this action. However, if any of the predicate claims were barred by the statute of limitations prior to the September 2010 confiscation, that may defeat Mr. Sloan's contention that the claim was nonfrivolous or meritorious, a prerequisite to his access-to-courts claim. But, that is not the issue presently before the Court.[1]

In sum, Mr. Sloan's allegations indicate that the September 2010 confiscation of his legal papers hindered his presentation of three conditions of confinement claims that arose at SCI-Forest. At the motion to dismiss stage, and in deference to Plaintiff's *pro se* status, his access-to-courts claims predicated on these three events, will be allowed to proceed against Defendants Flowers, Flinn, Murray and Southers.

---

[1] Likewise, if Defendants could prove that Mr. Sloan pursued these claim in any of his other actions, that too would go toward the viability of the particular predicate claim, but that issue is not presently before the Court.

### 3. Mr. Sloan's Conspiracy Claim.

Mr. Sloan alleges that all of the Defendants conspired to either take his legal property or to "cover up" the wrong doing of others by "intentionally falsif[ying] & manipulat[ing] facts and documents and ignored plaintiff's attempts to require property ... before it was too late." (Doc. 1, Compl. at p. 4.) Defendants contend that Mr. Sloan fails to plead sufficient facts to allege a conspiracy claim.

In order for a § 1983 civil conspiracy claim to survive a motion to dismiss, a plaintiff is required "to provide some factual basis to support the existence of the elements of a conspiracy." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009). Indeed, a plaintiff is required to show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993); *see also Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009). While the Third Circuit Court of Appeals is "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances ..., the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso*, 588 F.3d at 185 (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)); *see also Adams v. Teamsters Local 115*, 214 Fed. Appx. 167, 175 (3d Cir. 2007)(nonprecedential)(a conspiracy claim cannot proceed merely upon the conclusory averment that a conspiracy took place but rather requires factual averments that would support the inference that the defendants engaged in concerted or joint

action). The mere conclusory assertion of a conspiracy is insufficient to satisfy the pleading standards under *Twombly, supra*; *see also Tindell v. Beard*, 351 F. App'x. 591, 594 (3d Cir. 2009).

Here, Mr. Sloan has adequately plead a conspiracy claim with respect to defendants Flowers, Flinn, Murray and Southers as he alleges that although Flowers and Flinn carried out the actual confiscations, they did so with the express approval of Murray and Southers. (Doc. 1 at p. 3). However, Mr. Sloan's conspiracy claim as to Carberry, Smeal, Taggart, and Williams fail as he has not plead any facts to support his conclusory claim of a conspiracy involving these individuals. The facts alleged in the Complaint do not remotely suggest these Defendants acted in agreement with one another other than their uniform unsatisfactory response to Mr. Sloan's inquiries. The mere conclusion of a conspiracy between these Defendants based on their individual responses to his inquiries is insufficient to assert a conspiracy claim against them.

### 4. Mr. Sloan's Eighth Amendment and Retaliation Claims Stemming from Events at SCI-Forest.

To be clear, Mr. Sloan has asserted a backward looking access-to-court claim based on the actions of four SCI-Camp Hill Defendants that injured/hampered/impaired his ability to litigate three predicate conditions of confinement claims that arose out of his stay at SCI-Forest. None of the named Defendants is employed at SCI-Forest. None of the named Defendants is alleged to have played any role in the events that occurred at SCI-Forest. Therefore, Mr. Sloan cannot pursue an Eighth Amendment conditions of confinement or other claim against the named Defendants arising out of

events that occurred during his stay at SCI-Forest. Defendants in this action cannot be sued for events that occurred at SCI-Forest due to their lack of personal involvement in those alleged unconstitutional actions. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

**V.     Conclusion**

Based on the foregoing, the following claims are still in the case: (1) the access-to-courts claim against Flowers, Flinn, Murray and Southers; (2) the conspiracy claim against Flowers, Flinn, Murray and Southers. Defendants Carberry, Smeal, Taggart and Williams will be dismissed from this action as to all claims.

An appropriate Order follows.

                                      **/s/ A. Richard Caputo**
                                      **A. RICHARD CAPUTO**
                                      **United States District Judge**

**Date: September   5  , 2012**