## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AARON SLOAN,                                :
                                            :
    Plaintiff                          :
                                            :     CIVIL NO. 3:CV-11-0994
    v.                                 :
                                            :     (Judge Caputo)
JOHN MURRAY, *et al.*,                      :
                                            :
    Defendants                         :

## M E M O R A N D U M

### I.    Introduction

Pro se Plaintiff, Aaron Sloan, claims his constitutional rights were violated when Pennsylvania Department of Corrections (DOC) officials conspired to confiscate and destroy his legal materials, thus preventing him from pursuing various conditions of confinement claims. Presently before the Court is the DOC Defendants' motion for summary judgment[1] and Mr. Sloan's motion to file a sur-reply brief. (ECF Nos. 74 and 84.) For the reasons set forth below, the Court will grant in part, and deny in part, the DOC Defendants' motion. Mr. Sloan's motion to file a sur-reply brief will be granted. Based on the Court's review of the summary judgment record, Mr. Sloan will be required to file a supplemental response addressing the "actual injury" he incurred related to his sole surviving access-to-courts claim.

---

[1] Following the Court's resolution of the DOC Defendants' motion to dismiss, the following DOC SCI-Camp Hill Defendants remain: Superintendent John Murray; Deputy of Facilities Management, Richard Southers; Lt. Kathy Flowers; and Corrections Officer (CO) Joshua Flinn.

## II. Summary Judgment Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the court must view all facts and draw all reasonable inferences "in the light most favorable to the party opposing the motion." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)(internal quotation marks omitted).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2553). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) - (B). To withstand summary judgment, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (citation omitted). The non-moving party "may not rest on speculation and conjecture in opposing a motion for summary judgment." *Ramara, Inc. V. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). Where contradictory facts exist, the court may not make credibility determinations or weigh the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 - 51, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (internal quotation marks and citations omitted); *Paradisis v. Englewood Hosp. Med. Ctr.*, No. 16-3616, 2017 WL 728688, at *3 (3d Cir. Feb. 24, 2017).

### III.   Procedural History

Mr. Sloan filed his Complaint on May 19, 2011. (ECF No. 1, Compl.) On September 5, 2012, the Court granted in part, and denied in part, the DOC Defendants' motion to dismiss. (ECF Nos. 23 and 24.)   The Court dismissed all but Mr. Sloan's access-to-courts and conspiracy claims against Defendants Flowers, Flinn, Murray and Southers. (ECF No. 24.) Defendants then filed a Waiver of Reply, complete with affirmative defenses. (ECF No. 28.)

On September 12, 2012, Mr. Sloan filed a Motion for Reconsideration of the Court's order addressing the Defendants' motion to dismiss. (ECF No. 25.) In resolving that motion the Court granted Mr. Sloan leave to file an amended complaint concerning his access-to-courts claim against previously dismissed defendants (Taggart, Smeal, Carberry and Williams).

After Mr. Sloan failed to file a timely amended complaint, and various discovery disputes were resolved, the Court issued an order calling for the close of discovery and the filing of dispositive motions.

Defendants' motion for summary judgment (ECF No. 74) is timely filed, properly supported by a brief (ECF No. 76), statement of material facts (ECF No. 75), supporting declarations and exhibits (ECF Nos. 75-1 to 75-6). Mr. Sloan filed an opposition brief (ECF No. 77) and his own statement of material facts (ECF No. 78). Following Defendants' filing of a Reply (ECF Nos. 81 - 82), Mr. Sloan filed a Sur-reply brief (ECF Nos. 83 - 86).

## IV. Statement of Undisputed Facts

From the pleadings, declarations and exhibits submitted therewith, the following facts are ascertained as undisputed or, where disputed, reflect Mr. Sloan's version of the facts, pursuant to this Court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.[2] *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2510.

While housed at SCI-Forest between July 15, 2008 and February 2, 2009, Mr. Sloan claimed his conditions of confinement violated his Eighth Amendment rights. (ECF No. 1, ¶ 1 - ¶ 3.) He "prepared and was about to submitted (sic) complaints about such [events] in the Common Pleas Court of Forest Count[y] and [the] United States District Court for the Western District of Pennsylvania," but his research was confiscated by Lt. Flowers and CO Flinn on

---

[2] In support of their summary judgment motion, Defendants submit a statement of material facts. (ECF No. 75.) However, because Mr. Sloan fails to properly oppose Defendants' statement of material facts as required by Middle District Local Rule 56.1, facts submitted by Defendants are deemed admitted.

-4-

September 18, 2010, during a cell search. (*Id.*, ¶ 5.) Defendants Flowers and Flinn, with the approval of Superintendent Murray and Deputy Superintendent Southers, intentionally confiscated his legal materials. (*Id.*, ¶¶ 6 - 7.) Mr. Sloan claims that due to Defendants' actions he was "unable to present claims and redress grievances through the courts and become weak where he is normally strong." (*Id.*, ¶ 10.)

### A.    DOC's Inmate Grievance System

The Pennsylvania Department of Corrections' (DOC) Administrative Directive DC-ADM 804 (DC-ADM 804) is also known as the Inmate Grievance System. It provides inmates with a multi-step administrative grievance appeal process to raise and resolve issues arising during the course of their incarceration. (ECF No. 75, Defs.' Statement of Facts (DSMF), ¶ 2.) Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the events giving rise to the grievance occurred. (DSMF ¶ 5.) If unsatisfied with the initial response to his or her grievance, the inmate may appeal the decision to the Facility Manager. (*Id.*) The Facility Manager may uphold the initial response, find in favor of the inmate, or remand the grievance to the Grievance Officer. (ECF No. 75-1, p. 14.) If remanded, "the Grievance Officer shall respond **to the inmate** within 5 working days. *The revised response shall be returned to the Facility Manager/designee for review prior to sending it to the inmate.*" (*Id.*) (emphasis in the original). "If dissatisfied with the response, the inmate may again appeal to the Facility Manager/designee within 5 working days from the date the inmate receives the revised response." (*Id.*) An inmate may then appeal the

Facility Manager's decision to final review by the Secretary's Office of Inmate Grievances and Appeals (SOIGA). (*Id.*)

## B. Mr. Sloan's Grievance Efforts Related to his September 18, 2010, Loss of Legal Property.

On October 6, 2010, Mr. Sloan submitted grievance 338188 concerning the September 18, 2010, search of his E Block cell. (ECF No. 75-2, p. 4, Grievance 338188; DSMF ¶ 9.) Several moments after officers entered his cell, Mr. Sloan heard Lt. Flowers tell an officer "good job, get all that." (*Id.*) Mr. Sloan heard officers "in his cell speaking of taking items from his cell." (*Id.*) When the officers "were done," Mr. Sloan "looked over to see CO Flinn, Lt. Flowers and two other officers" come out of his cell with a trash bag containing a substantial amount of paper." (*Id.*) When Mr. Sloan asked what was in the bag, CO Flinn responded "a bag full of goodies." (*Id.*) Upon returning to his cell, Mr. Sloan realized his glasses, personal items and pictures were missing.[3] He also claims "affidavits/declaration [and] court filings" were missing. (*Id.*) Mr. Sloan makes no mention of either John Murray or Richard Southers in his grievance. (DSMF ¶ 11.)

Capt. Bailey, the 6-2 Shift Commander, provided the Initial Response to the grievance. (DSMF ¶ 12; ECF No. 75-2, p. 5.) Mr. Sloan was advised that the "trash bag [he] saw also contained trash from other cells searched prior to [his]." (*Id.*) Mr. Sloan appealed the Initial Response to Superintendent Murray. (*Id.*, p. 6.) In his appeal Mr. Sloan claims he has "no

---

[3] Mr. Sloan has filed a separate action concerning the loss of his eye glasses that day. See *Sloan v. Chambers*, Civ. No. 3:CV-12-1954 (M.D. Pa.).

means to litigate open and active cases due to the stealing of my legal property and lost unreplaceable personal property." (*Id.*) Again, Mr. Sloan made no mention of Superintendent Murray's or Mr. Southers' involvement in the confiscation of his legal materials. (*Id.*) Superintendent Murray provided Mr. Sloan with a response to his appeal. (*Id.*, p. 7.) Superintendent Murray remanded the issue to Mr. Carberry "to check with the SMU Property Officer to try and determine what items were confiscated from [his] cell during the authorized cell search that occurred on Saturday, September 18, 2010." (*Id.*) He added that Mr. Sloan "[would] be provided with additional information concerning the property that was confiscated during the September 18, 2010 cell search. Upon receipt of Mr. Carberry's additional information, [Mr. Sloan] may appeal this matter back to [Superintendent Murray] one more time before filing your appeal with the Secretary's Office of Grievances and Appeals." (*Id.*) No further appeal of this grievance was filed. (*Id.*, ECF p. 29; DSMF ¶¶ 11 - 12.)

### C.     Defendant Superintendent Murray

On September 18, 2010, Superintendent Murray did not participate in the search of Mr. Sloan's cell. (DSMF ¶ 18.) Prior to the search, he did not communicate with anyone about searching Mr. Sloan's cell, removing any items from his cell, or attempting to prevent him from filing any lawsuits. (DSMF ¶ 19.) While the search was being conducted, Superintendent Murray never communicated with anyone about searching Mr. Sloan's cell, removing any items from his cell, or attempting to prevent him from filing any lawsuits. (DSMF ¶ 20.)

Superintendent Murray never directed or gave approval to anyone to destroy or remove legal materials from Mr. Sloan's cell. (DSMF ¶¶ 21 - 22.)

### D. Defendant Deputy Southers

On September 18, 2010, SCI-Camp Hill conducted a search of the inmates' cells during a Planned Emergency Drill. (DSMF ¶ 24.) Richard Southers did not actively participate in the search of inmates' cells that day. (DSMF ¶ 25.) Deputy Southers was stationed in the Command Center away from the inmates' cells during the search. (DSMF ¶ 26.) Prior to and during the search, Deputy Southers never informed anyone to specifically search Mr. Sloan's cell or to remove items from his cell. (DSMF ¶ 27 and ¶ 28.) Deputy Southers never directed or gave approval to anyone to destroy or remove any legal materials from Mr. Sloan's cell. (DSMF ¶ 29.)

### E. Defendant Lt. Flowers

Lt. Flowers does not remember the cell search conducted at SCI-Camp Hill on September 18, 2010. (DSMF ¶ 32.) However, as a Lieutenant, she would not have actively participated in searching an inmate's cell. (DSMF ¶ 33.) Regardless, if a Corrections Officer confiscated an item of contraband, they would provide the inmate with a Confiscation Item Receipt and retain two copies for staff. (DSMF ¶ 34.) An inmate's legal paperwork would not be considered trash and thrown away. (DSMF ¶ 35.) No one communicated with Lt. Flowers in any manner about Mr. Sloan's cell prior to or during the September 18, 2010-search.

(DSMF ¶ 36.) Prior to and during the search, Lt. Flowers never communicated with anyone, including Superintendent Murray, Richard Southers, or Joshua Flinn, about removing or confiscating any items from Mr. Sloan's cell. (DSMF ¶ 37.) Lt. Flowers never communicated with anyone in any manner about attempting to deny Mr. Sloan access to the courts. (DSMF ¶ 38.)

### F.    Defendant CO Flinn.

In September 2010, Joshua Flinn was a member of the Corrections Emergency Response Team (CERT). (DSMF ¶ 39.) On September 18, 2010, CO Flinn received a page/message requesting his immediate presence at SCI-Camp Hill. (DSMF ¶¶ 40 - 41.) He did not know why he was to report to the institution. (DSMF ¶ 42.) Upon his arrival at SCI-Camp Hill, CO Flinn and approximately twenty Corrections Officers were informed that their mission was to conduct cell searches. (DSMF ¶ 43.) At the meeting, no one directed the Corrections Officers to search any particular cell. No one ever mentioned Mr. Sloan's name. (DSMF ¶ 44.) No one communicated with CO Flinn in any manner about searching Mr. Sloan's cell prior to or during the search. (DSMF ¶ 45.) No one, including Lt. Flowers who was present at the briefing, discussed or directed CO Flinn to retrieve any specific item or search any particular inmate's cell that day. (DSMF ¶ 46.) The gathered Corrections Officers, grouped into teams of three, conducted searches. (DSMF ¶ 47.) Each team had garbage bags to collect trash from the inmates' cells. (DSMF ¶ 48.) Trash consisted of items such as milk cartons, cereal boxes, fruit, etc. (DSMF ¶ 49.) CO Flinn does not consider paper items

to be trash. (DSMF ¶ 50.) If CO Flinn found contraband, e.g. a weapon or material prohibited per policy, he would confiscate the contraband from the inmate's cell and provide the inmate with a Confiscated Items Receipt. (DSMF ¶ 51.)

Prior to and during the search, CO Flinn never communicated with Superintendent Murray, Deputy Southers, or Lt. Flowers about removing or confiscating any items from Mr. Sloan's cell. (DSMF ¶ 52.) He does not specifically remember searching Mr. Sloan's cell. (ECF No. 75-6, ¶ 24.) If CO Flinn would have removed any non-trash items from Mr. Sloan's cell, he would have provided Mr. Sloan with a Confiscated Items Receipt. (DSMF ¶ 53.)

## V. Discussion

### A. Mr. Sloan's Failure to Exhaust Grievance 338188 to Final Review is Excused.

Defendants allege Mr. Sloan did not fully exhaust grievance 338188 concerning the confiscation of his legal materials on September 18, 2010 to final review as required by the DOC's grievance policy. Alternatively, they argue that he did not properly follow the DOC's grievance policy or exhaust his available administrative remedies and thus is precluded from pursing claims concerning the loss of his legal materials.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any

-10-

limitations on the kind of remedy that may be gained through the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 1825 n. 6, 149 L.Ed.2d 958 (2001). "Exhaustion is a question of law to be determined by a judge, even if that determination requires resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013).

The PLRA mandates "proper exhaustion" of the agency's deadlines and other procedural rules pertaining to its grievance/administrative remedy process. *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion". *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" as they are "defined ... by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 922 - 23, 166 L.Ed.2d 798 (2000) (quoting *Ngo*, 548 U.S. at 88, 126 S.Ct. at 2384.) Inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d at 228, 235. "As for the failure to [ ] identify [the] named defendants on the grievance form, ... to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, ... in the absence of any justifiable excuse, a Pennsylvania inmate's failure to

properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005). The reason for this is because "the purpose of the [grievance process] is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." *Rosa Diaz v. Dow*, No. 16-4349, 2017 WL 1097101, n. 3 (3d Cir. Mar. 23, 2017) (citing *Spruill*, 372 F.3d at 234).

An inmate need only exhaust those administrative remedies that are actually "available" to him. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). "Available" means "capable of use; at hand." *Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir. 2013) (quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002)). "Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes." (*Id.*) Likewise, if the actions of prison officials directly cause the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the PLRA's exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

Here, it is undisputed that Mr. Sloan filed grievance 388188 concerning the September 18, 2010 cell search. He appealed the Initial Response to Superintendent Murray who remanded the matter to Mr. Carberry. Pursuant to the DOC's grievance policy and Superintendent Murray, Mr. Sloan could not pursue an appeal to SOIGA prior to receiving, and appealing, Mr. Carberry's supplemental response to Superintendent Murray. Mr. Sloan argues

Mr. Carberry never provided him with a response and therefore the DOC's administrative remedy process was "unavailable" to him. As neither party submits a copy of Mr. Carberry's supplemental response, or a declaration from Mr. Carberry as to his response (if any), the Court finds sufficient reason to excuse Mr. Sloan's further utilization of the DOC's grievance policy with respect to grievance 338188. As exhaustion is an affirmative defense, the Defendants' have not carried their burden to demonstrate that the DOC's administrative remedy process was available to Mr. Sloan to allow him to pursue grievance 338188 to final review.

Next, Defendants argue for the first time in their Reply Brief, that even if Mr. Sloan did not pursue his grievance to final review, his Complaint should be dismissed because he failed to properly comply with the DOC's grievance procedures.[4] (ECF No. 81, Reply.) Specifically, Defendants claim Mr. Sloan failed to comply with the following requirement:

> In cases involving personal property or publication denials, the inmate must clearly notify the Facility Manager or Facility Grievance Coordinator of his/her intent to appeal the issue to the Secretary's Office of Grievances and Appeals if he/she disagrees with the decision from the Initial Review.

(ECF No. 75-1, p. 13, DC-ADM 804, *Inmate Grievance System Policy,* Appeal to Facility Manager, Inmate Responsibilities.) Aside from asserting that Defendants' argument should be stricken as it was first raised in their Reply Brief, Mr. Sloan counters that Superintendent

---

[4] Like an issue raised for the first time in an appellate brief, issues raised for the first time in a reply brief supporting summary judgment are deemed waived because the opposing party typically does not have the opportunity to respond. *See Issa v. Sch. Dist. of Lancaster,* 847 F.3d 121, 139 n.8 (3d Cir. 2017) (citing *Prometheus Radio Project v. Fed. Commc'ns Comm'n,* 824 F.3d 33, 53 (3d Cir. 2016). However, in this instance, as Mr. Sloan filed a Sur-reply brief (ECF Nos. 85 - 86), the Court will consider Defendants' argument and Mr. Sloan's response.

Murray accepted his appeal of the Initial Response to grievance 338188. He did not reject it or dismiss it for failure to comply with the grievance process. (*Id.*) Further, he argues that any non-compliance with the grievance policy, to the extent there was one, was waived by the DOC upon remand. (ECF No. 86.)

In order to properly consider Defendants' claim of Mr. Sloan's non-compliance the Court must also consider the Facility Manager's responsibility under the grievance policy when addressing confiscated inmate property:

> Personal property and publications related to a grievance shall not be disposed of unless it is clearly documented that the inmate has no intent to appeal the *Initial Review decision*. When an inmate notifies the Facility Manager or Facility Grievance Coordinator of his/her intent to appeal the decision, the property related to the grievance shall be placed in a safe location until final disposition is made by the Secretary's Office of Inmate Grievances and Appeals. Following the disposal of the appeal by the Secretary's Office of Inmate Grievances and Appeals, the inmate will be provided with his/her options to retain, ship at his/her expense or have the property or publication destroyed.

(*Id.*, p. 14, *Inmate Grievance System Policy,* Appeal to Facility Manager, Staff Responsibilities.) The two portions of the grievance policy cited by the parties, read together, demonstrate the mutual obligations of inmates and staff when addressing confiscated property. The DOC is tasked with preserving confiscated personal property or publications until the inmate either abandons it by failing to pursue his administrative remedies, surrenders it, or the confiscation is upheld by SOIGA. Similarly, via the grievance policy, the DOC places inmates on notice that unless they grieve the confiscation of personal property, and seek its return, the DOC will not preserve the property. In this instance the record is clear that Mr. Sloan sought the return of

-14-

his legal materials. In an environment where legal materials are endowed with a higher level of protection than other personal property, prison officials were on notice to preserve the confiscated property to the extent it could be identified, secured, and located by Mr. Carberry. Thus, the Court does not find Mr. Sloan failed to substantially comply with the DOC's grievance policy in this instance.[5] The Defendants' motion for summary judgment based on Mr. Sloan's non-compliance with the grievance policy by failing to explicitly notifying the Facility Manager of his intent to appeal the loss of his legal materials to final review will be denied.

### B. Mr. Sloan's Claims against Superintendent Murray and Deputy Southers are Procedurally Defaulted.

Defendants argue that Mr. Sloan's Complaint should be dismissed as to Superintendent Murray and Deputy Southers as he fails to identify them, or otherwise implicate their involvement, in the events of September 18, 2010, as asserted in grievance 388188. (ECF No. 76, p. 9.) Mr. Sloan counters that "[i]n grievance 338188 Plaintiff stated that '[i]nvolved' are CO II Flinn, CO III Flowers, CO John Doe 1, CO John Doe 2 *and other unknown prison officials.*" (ECF No. 77, p. 7.) He now argues the "other unknown prison officials" were Deputy Southers and Superintendent Murray. (*Id.*) However, to construe the language of the grievance as Plaintiff suggests, when it fails to even hint at the involvement of staff other than those not physically present in Mr. Sloan's cell that day, would defeat the purpose of the PLRA.

_____

[5] Had Mr. Sloan been issued a property receipt identifying the confiscated materials, or had Superintendent Murray not remanded the Initial Response for further investigation, the Court's decision on this matter may have been different. However, those are not the facts before the Court.

To the extent Mr. Sloan argues that his knowledge of Superintendent Murray's and Mr. Souther's involvement was not known at the time of filing grievance 338188, this argument does not address his failure to name them, or their involvement, in a subsequent grievance once he learned of their alleged participation. When Mr. Sloan learned of the critical role Superintendent Murray and Mr. Southers had in the confiscation of his property, he had an obligation to file a grievance. To hold otherwise would allow prisoners to add claims of retaliation or conspiracy in federal court without first advancing it through the prison's administrative remedy process. *See Boyd v. United States*, 396 F. App'x 793, 796 (3d Cir. 2010) (nonprecedential) ("[T]o pursue a claim in federal court based on retaliation, [a prisoner] must first have exhausted administrative remedies for that claim.")

Given the language of Mr. Sloan's grievance, neither supervisor defendant could be construed as being "fairly within the compass of" the grievance. *Diaz, supra*. There is no language in the grievance to suggest that Mr. Sloan believed prison officials, other than those who physically entered his cell that day, directed or approved the seizure of his legal materials. Mr. Sloan did not include any language in his grievance, even by naming John Does, that would allow the Court to conclude otherwise. The Court agrees with Defendants that Mr. Sloan has procedurally defaulted his claims against Superintendent Murray and Deputy Southers.

C.     Mr. Sloan's Access-to-Courts Claims

Inmates have a constitutional right to access the courts, *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977), and may recover for denial of that right in a civil rights lawsuit if he or she can demonstrate that an actual injury occurred as a result of the denial, *Lewis v. Casey*, 518 U.S. 343, 352 - 53, 116 S.Ct. 2174, 2180 - 81, 135 L.Ed.2d 606 (1996). An actual injury is shown only where a nonfrivolous, arguable claim is lost. *Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 2187, 153 L.Ed.2d 413 (2002). The actual injury requirement is a constitutional prerequisite to suit. *Lewis,* 518 U.S. at 351, 116 S.Ct. at 2180; *Harbury*, 536 U.S. at 415, 122 S.Ct. at 2187 (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). The Supreme Court has stated that denial-of-access-to-courts cases have emerged into two separate categories which include either "forward-looking" or "backward-looking" claims. Forward-looking claims involve official action that "frustrates a plaintiff ... in preparing and filing suits at the present time." *Id.* at 413, 122 S.Ct. at 2185. The object of this type of suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413, 122 S.Ct. at 2186. Backward-looking claims involve those allegations that "cannot now be tried ... no matter what official action may be in the future." *Id.* at 414, 122 S.Ct. at 2186. "The ultimate object of [backward-looking] claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.* at 414, 122 S.Ct. at 2186.

Whether the claim is forward or backward looking, the elements of both claims are the same. A plaintiff raising an access-to-courts claim must plead: (1) a "nonfrivolous,""arguable"underlying claim; (2) the official acts obstructing the litigation; (3) "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415, 122 S.Ct. at 2187. Plaintiff must make out the denial-of-access elements against each defendant in conformance with the requirements of § 1983. *Id.* at 416, 122 S.Ct. at 2187; *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Conclusory allegations are not sufficient in this regard. *Johnson v. Cash*, 557 F. App'x 102, 104 n. 3 (3d Cir. 2013) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949). "[P]risoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and must describe the 'lost remedy.'" *Monroe*, 536 F.3d at 205 - 06. The United States Supreme Court has explained that in the context of alleging the underlying claim that the plaintiff was prevented from pursuing, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued [.]" *Harbury*, 536 U.S. at 417 - 18, 122 S.Ct. at 2188 (footnote omitted).

In *Monroe*, the Third Circuit determined that the complaint failed to state an access to courts claim upon which relief could be granted and stated the following:

> In this case, the defendants confiscated all of the plaintiffs' contraband and non-contraband legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes. In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials,

-18-

> contraband and non-contraband alike. That claim, on its face, was insufficient to state a claim under *Harbury*. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims. Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered an actual injury.

536 F.3d at 206 (internal citation and footnote omitted). Clearly *Monroe* establishes that merely stating that a prisoner was deprived of legal materials is insufficient to show that the claims were nonfrivolous. Finally, it is well-settled that the lack of a meritorious underlying claim precludes a plaintiff from subsequently pursuing a constitutional denial of access to courts claim. *See, e.g., Prater v. City of Philadelphia*, 542 F. App'x 135, 137 (3d Cir. 2013); *Allen v. Ripoll*, 150 F. App'x 148, 150 (3d Cir. 2005).


## 1.    Personal Involvement

To establish liability for the deprivation of a constitutional right, an individual government defendant must have personal involvement in the alleged wrongs; liability cannot be predicated based on the unconstitutional conduct of their subordinates under a theory of *respondeat superior. Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor may be

-19-

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

In his Complaint, Plaintiff claims all of the Defendants were involved in the confiscation of his legal materials on September 18, 2010. However, at summary judgment, the allegations in his Complaint do not create a dispute as to material issues of fact. *Orsatti v. N. J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") Here, Superintendent Murray's affidavit states he did not physically participate in the search, direct anyone to search Mr. Sloan's cell, or communicate with anyone prior to or during the search of Plaintiff's cell. (ECF No. 75-3; DSMF ¶¶ 17 - 20.) Deputy Superintendent Southers affirms that he did not actively participate in the search of prisoners' cells on September 18, 2010. At that time he was the Incident Commander and supervised the Planned Emergency Drill from the Command Center which is away from inmate cells. Prior to and during the search, he never informed anyone to search Mr. Sloan's cell or remove any items from his cell. (ECF No. 75-4; DSMF ¶¶ 25 - 28.) Again, neither Superintendent Murray nor Deputy Superintendent Southers are mentioned in Mr. Sloan's grievance or appeals concerning the search of his cell. (DSMF ¶ 11.) Thus, Mr. Sloan has failed to create a genuine issue of fact

-20-

as to these two Defendants' involvement in the alleged confiscation of his legal materials. Next, while Mr. Sloan alleges that Lt. Flowers participated in the search of his cell, he fails to provide any evidence to dispute her declaration that as a Lieutenant she would not have actively participated in searching an inmate's cell. (ECF No. 75-5; DSMF ¶ 33.) Therefore, as Mr. Sloan has failed to identify any evidence in the record to support his assertion that Lt. Flowers interfered, directly or indirectly, with his access-to-the-courts, Defendants' motion for summary judgment as to these Defendants will be granted.

With respect to CO Flinn, he affirms that on September 18, 2010, as a member of CERT, he participated in searching Restricted Housing Unit and Special Management Unit cells that day but has no recollection of whether he searched Mr. Sloan's cell. (ECF No. 75-6; DSMF ¶ 39 and ¶¶ 43 - 50.) Based on the record before the Court, CO Flinn's involvement in the alleged confiscation of Mr. Sloan's legal materials is unclear, and a rational trier of fact could not find he was or was not involved in the search of Mr. Sloan's cell. The Court will not grant summary judgment as to Mr. Sloan's access-to-courts claim against this Defendant.

2.    **Actual Injury, Nonfrivolous Requirement of Mr. Sloan's Predicate Access-to-Courts Claims**

Mr. Sloan alleges in his Complaint that but for the confiscation of his legal materials, he would have filed civil rights actions concerning the following events that transpired while he was housed at SCI-Forest: (1) on July 15, 2008, he was placed in an unsanitary cell "for a substantial time;" (2) between September 3 - 10, 2008, he was placed in a cell without proper water or sanitation, and denied adequate meals for retaliatory reasons; and (3) between

-21-

September 28, 2008 and January 2, 2009, he was repeatedly denied food, water and sanitation. (ECF No. 1, ¶¶ 1-4.)

As noted above, to present an access-to-courts claim, Mr. Sloan must show that he was actually injured by a Defendant's confiscation of his legal materials. *Lewis*, 518 U.S. 349, 116 S.Ct. at 2179; *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997). Also, while a right of access claim cannot properly be maintained in the absence of actual injury, the United States Supreme Court in *Lewis* emphasized that a demonstration of actual injury does not automatically result in a right of access violation. *See Lewis*, 518 U.S. 361, 116 S.Ct. at 2185. Defendants claim that Mr. Sloan has failed to satisfy the actual injury requirement necessary to establish an access-to-courts claim.

Defendants argue that Mr. Sloans claims concerning his July 2008 and September 3 - 10, 2008 conditions of confinement claims were time barred on the date of the cell search. (ECF No. 76.) The Court agrees. "The statute of limitations period for a § 1983 claim arising in Pennsylvania is two years." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The date when a § 1983 cause of action accrues is determined by federal law. Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, "'when the plaintiff knew or should have known of the injury upon which [his] action is based.'" *Kach*, 589 F.3d at 634 (quoted cases omitted) (brackets added). The continuing violations doctrine is an "equitable exception to the timely filing requirement," which applies "when a defendant's conduct is part of a continuing practice" and is "more than the occurrence of isolated or sporadic acts." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). Under the doctrine,

"an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.*

Mr. Sloan counters that the continuing violation doctrine extends the limitations period for all of his conditions of confinement claims until January 2, 2009, when his third and final claim terminated. (ECF No. 77.) Mr. Sloan's general assertion of the continuing violation doctrine is unsupported by the record. Mr. Sloan fails to plead with sufficient specificity that the events that occurred at SCI-Forest are not isolated incidents or even involve the same defendants. Thus, the Court finds that Mr. Sloan's access-to-courts claims that accrued two or more years prior to September 18, 2010 were time-barred as of the date of the cell search. Moreover, Mr. Sloan does not argue that the statute of limitations for these claims was extended by his administrative exhaustion efforts.[6] Based on Mr. Sloan's failure to demonstrate any reason for extending the statute of limitations period for these two claims, the Court finds they were time barred at the time of the September 18, 2010, cell search. As such, he cannot demonstrate any actual harm or injury caused by the confiscation of his legal materials during the cell search. Defendants are entitled to summary judgment in their favor as to Mr. Sloan's first two access-to-courts claims premised on the September 18, 2010, confiscation of legal materials.

The sole remaining possible predicate claim for Mr. Sloan's access-to-courts claim relates to loss of legal materials concerning his conditions of confinement at SCI-Forest

---

[6] "[B]ecause exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act ('PLRA)', the statute of limitations applicable to § 1983 actions should be tolled while a prisoner pursues the mandated remedies." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015)).

between September 28, 2008 and January 2, 2009. (ECF No. 1, ¶¶ 1-4.) While the Defendants do not challenge the viability of this claim, the Court may do so pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Mr. Sloan's Complaint simply asserts that Defendants interfered with his right-to-access-the-courts by seizing his legal papers on September 18, 2010, and "caused plaintiff to be unable to present claims and redress grievances through, the courts and become weak where he is normally strong." (ECF No. 1, ¶ 10.) In *Monroe*, the Third Circuit Court of Appeals held that merely asserting that a prisoner was deprived of legal materials was insufficient to show that the "lost" claims were non-frivolous. *Monroe*, 536 F.3d at 206. Here Mr. Sloan's general assertion of the confiscation of his legal materials relative to his last claim do not "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and [does not] describe the 'lost remedy.'" *Id.*, 205 - 06 (quoting *Harbury*, 536 U.S. at 416 - 17, 122 S.Ct. at 2187. Accordingly, the Court finds that Mr. Sloan has failed to state an access-to-courts claim based on the confiscation of his legal materials related to his conditions of confinement claim at SCI-Forest between September 28, 2008 and January 2, 2009. Likewise, he fails to plead or otherwise demonstrate that he had no other remedy for the lost claim other than in his present denial of access suit. *Monroe*, 536 F.3d at 205. Plaintiff does not explain or factually support his allegations that he was "shut out" of court due to the confiscation of his legal materials when more than a year of the relevant statute of limitations remained for him to pursue those claims. Similarly, he fails to aver sufficient facts to suggest that any action concerning his conditions of confinement were non-frivolous. As such, based on Mr. Sloan's Complaint and the evidence in the record, the Court finds that Mr. Sloan's

-24-

simple allegation as to the confiscation of his legal materials concerning his conditions of confinement claim at SCI-Forest between September 28, 2008 through January 2, 2009, fails to satisfy the pleading requirements of an access-to-courts claim as he fails to allege actual injury. However, because the Court raises this claim, Mr. Sloan will be given the opportunity to respond. Mr. Sloan shall be required to demonstrate that his final claim was not legally frivolous and how he was "shut out" of court or otherwise demonstrate "injury" due to the confiscation of his legal materials. While the factual merits of his conditions of confinement claim will not be reviewed by this Court, Mr. Sloan will be required to demonstrate that his claims were not legally frivolous, i.e. that they were properly exhausted and thus in the proper posture to be pursued in federal court. Additionally, Plaintiff shall provide information as to his efforts to pursue his conditions of confinement claims in a court of law (the Court of Common Pleas of Forest County or the Western District of Pennsylvania) and the outcome of those efforts, i.e. the reasons why his actions were dismissed or failed. Without such evidence, the Court will dismiss Mr. Sloan's sole remaining access-to-courts claim against CO Flinn based on the confiscation of legal materials concerning his conditions of confinement at SCI-Forest between September 28, 2008 and January 2, 2009 due to Plaintiff's failure to allege actual injury.

### D.    Conspiracy

In order to demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a

-25-

constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136, 140 (3d Cir. 2013)(nonprecedential)(internal citations omitted). To plead a conspiracy claim properly, a plaintiff must allege "facts that plausibly suggest a meeting of the minds." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 170 (3d Cir. 2010). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point." *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966. A conspiracy claim that lacks "an adequate factual basis" is properly dismissed. *Simmons v. Szelewski*, 642 F. App'x 95, 99 (3d Cir. 2016) (nonprecedential) (citing *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 182 (3d Cir. 1988).

Mr. Sloan's Complaint fails to provide facts necessary to establish that any of the Defendants shared a united purpose to injury him. His allegation is simply a conclusory one without even a hint of evidence that a conspiracy existed to confiscate his legal materials so as to prevent him from pursuing valid claims in a court of law. All Defendants have provided uncontroverted declarations as to their failure to direct or acquiesce to the requests of another with respect to directing Mr. Sloan's cell be searched that day or that specific items be

removed from his cell.  Based on the above, Defendants are entitled to summary judgment on Plaintiff's conspiracy claim.

An appropriate order follows.

/s/ A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

Date: August 10, 2017